UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CREDIT ACCEPTANCE CORPORATION, | : | |
| | : | Judge Donald Nugent |
| Plaintiff, | : | Magistrate Judge Baughman |
| | : | |
| v. | : | |
| | : | Case Number: 1:08-cv-107 |
| DEBRA G. DAVISSON, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW OF CREDIT ACCEPTANCE CORPORATION**
**IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION**

Plaintiff Credit Acceptance Corporation ("Credit Acceptance") submits this Memorandum of Law in Support of its Petition to Compel Arbitration.

## I. INTRODUCTION

Credit Acceptance and Defendant / Counter-Claimant Debra G. Davisson ("Davisson") are parties to a Retail Installment Contract (the "Contract") executed in September 2005. A true and correct copy of the Contract is attached hereto as Exhibit A. The Contract contains a binding Agreement to Arbitrate. The Agreement to Arbitrate gives each party the right to require arbitration of any individual claims brought by the other party in court.

On or about December 14, 2007, Davisson filed a "Class Action Counter-Claim" (the "Counter-Claim") in the state court action subsequently removed to this Court and which is pending under docket number 1:08-cv-93. A true and correct copy of the Counter-Claim is attached hereto as Exhibit B. The Counter-Claim purports to state causes of action against Credit Acceptance for: (a) violation of Ohio's Retail Installment Sales Act and Consumer Sales Practice Act, Counter-Claim at ¶ 27-37; (b) violation of Ohio's Uniform Commercial Code, Counter-

Claim at ¶ 38-42; and (c) violations of Ohio common law, specifically, conversion and trespass to chattel, Counter-Claim at ¶ 43-47. Davisson purports to bring these claims on her own behalf and on behalf of a putative class of all persons who entered into a retail installment contract for the purchase of a vehicle in Ohio where the contract was assigned to Credit Acceptance and Credit Acceptance subsequently repossessed the vehicle on or after December 14, 2001. Counter-Claim at ¶ 48. The crux of Davisson's claims is her allegation that Credit Acceptance failed to notify her that she was required to pay only $25.00, rather than the $310 sought by Credit Acceptance, in repossession expenses to cure her default under the Contract. Thus, all of Davisson's claims arise out of the Contract executed by Davisson and immediately assigned to Credit Acceptance.

Even if Davisson's allegations were true and stated claims, which they do not, they have been brought in the wrong forum. Rather, all of her individual claims are subject to arbitration pursuant to the parties' Agreement to Arbitrate and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq. The Agreement to Arbitrate between Davisson and Credit Acceptance broadly provides that "any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract" shall be subject to binding arbitration. In addition, the Agreement to Arbitrate requires that Davisson proceed with her claims on an individual basis - thus invalidating her attempts to pursue this action in a representative capacity.

For the following reasons, Credit Acceptance respectfully requests that this Court grant its Petition to Compel Arbitration.

## II. FACTS

Davisson purchased a motor vehicle from an Ohio dealer on or about September 17, 2005, at which time she entered into the Contract to finance the $9,330.19 cost for the purchase of the vehicle and an extended warranty. Declaration of Douglas W. Busk ("Busk Declaration") at ¶ 8, Exhibit C hereto. The Contract was immediately assigned to Credit Acceptance. Id. at ¶ 9. Credit Acceptance is a party to, and as an assignee may enforce, the Contract as it explicitly defines "us" and "we" as "Creditor-Seller and Creditor-Seller's assignee."

Since that time, Davisson and Credit Acceptance have operated pursuant to the Contract, which sets forth the terms and conditions governing the relationship between Credit Acceptance and Davisson. Busk Declaration at ¶ 10. As part of the Contract, Davisson agreed to make monthly installment payments by the 15th of each month. Id. at ¶ 11. Davisson failed to timely pay the monies due and owing on September 15, 2006. Id. As a result, Credit Acceptance repossessed the vehicle. Id. at ¶ 12. Credit Acceptance subsequently auctioned the vehicle and applied the proceeds of the sale against the remaining monies due to Credit Acceptance by Davisson. Id. Davisson consequently owes Credit Acceptance a balance of $2,538.06, the sum for which Credit Acceptance instituted the state court action. Id.

The Contract executed by Davisson contains an Agreement to Arbitrate. The Agreement to Arbitrate sets forth the terms for the resolution of disputes between Credit Acceptance and Davisson with a "dispute" defined as:

> …any dispute, controversy or claim between You or us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract, or the purchase; sale, delivery, set-up, quality of the Vehicle, or any product or service included in this Contract. "Dispute" includes' contract claims, and claims based on tort or any other legal theories.

Credit Acceptance is a party to the Agreement to Arbitrate as it provides: "In this Arbitration Clause, 'we' and 'us' mean Seller and/or Seller's Assignee, Credit Acceptance Corporation, or their employees, agents or assignees."

The Agreement to Arbitrate provides explicit terms detailing Davisson's right to reject the Agreement and the procedures for so doing:

> Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing us at P.O. Box 5070, Southfield; Michigan 48086-5070 a written rejection notice which describes the Contract and tells us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers and cosigners and the envelope that the rejection is sent in has a post mark of 14 days or less after the date of this Contract.

The Agreement to Arbitrate specifically provides that: "If You [Davisson] reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of your Contract. If You [Davisson] don't reject this Arbitration Clause, it will be effective as of the date of the Contract." At no time has Credit Acceptance ever received from Davisson any notification – written or otherwise – that she did not agree with or wished to opt-out of the Agreement to Arbitrate. Busk Declaration at ¶ 14.

The Agreement to Arbitrate provides, in relevant part, that the parties each have the option of requiring the arbitration of any claims brought by the other party in court:

> Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit.

Pursuant to the Agreement to Arbitrate, Credit Acceptance does not waive the right to submit a dispute to arbitration by virtue of the exercise of any self-help remedies or institution of an action for judicial relief:

> Notwithstanding the foregoing, we retain the right to repossess the Vehicle upon your default and to exercise any power of sale under

> this Contract. The institution and maintenance of any action for judicial relief or exercise of self-help remedies shall not waive the right to submit any Dispute to arbitration, including any Counter-Claim asserted in any such action, and including those controversies, or claims arising from the exercise of any such judicial relief or the exercise of self-help remedies.

The Agreement to Arbitrate explicitly provides the procedures applicable to counter-claims such as those brought by Davisson:

> If a demand for arbitration of any Counter-Claim is made, the entire Dispute shall be submitted to binding arbitration pursuant to this Arbitration Clause. If a party requests arbitration under this Contract the other party shall submit to arbitration any claim or Counter-Claim which such party may have against the requesting party, whether deemed to be compulsory or permissive in law.

The Agreement to Arbitrate further provides that all disputes must be resolved on an individual basis:

> You and we agree that all Disputes must be resolved on an individual basis through arbitration and that representative actions, such as class actions, are prohibited and regardless of any statements in this Arbitration Clause that state otherwise, the validity and effect of the class action prohibition may only be determined by a court and not by an arbitrator.

The Agreement to Arbitrate requires that, once submitted to arbitration, the entire dispute (including Credit Acceptance's claim seeking a deficiency judgment) shall be fully resolved by binding arbitration.

The Agreement to Arbitrate explicitly states twice that it is governed by the FAA. The Contract, of which the Agreement to Arbitrate is part, involves interstate commerce and thus the FAA applies to this action. Davisson purchased and operated the vehicle in Ohio. Busk Declaration at ¶ 10. Credit Acceptance, which is a Michigan corporation with its principal place of business in Michigan, purchased and serviced the Contract from its headquarters in Michigan. Id. Credit Acceptance has no offices in Ohio. Id.

On or about August 27, 2007, Credit Acceptance filed a complaint against Davisson in the Court of Common Pleas, Lorain County, Ohio, Case No. 07-CV-152450, seeking to collect a balance of $2,538.06 owed by Davisson to Credit Acceptance. A true and correct copy of the Complaint is attached hereto as Exhibit D. On or about December 14, 2007, Davisson filed the Counter-Claim against Credit Acceptance.

In Counts I-III of her Counter-Claim, Davisson broadly claims that Credit Acceptance failed to disclose Davisson's rights regarding appropriate repossession fees charged under Ohio law. Specifically, in Count I, Davisson alleges that Credit Acceptance violated Ohio's Retail Installment Sales Act and Consumer Sales Practice Act by failing to notify Davisson that she was required to pay only $25.00, rather than the $310 sought by Credit Acceptance, in repossession expenses to cure her default under the Contract. In Count II, Davisson alleges that Credit Acceptance violated Ohio's Uniform Commercial Code in that failing to notify Davisson that she was required to pay only $25.00 in repossession expenses to cure her default under the Contract constituted commercially unreasonable conduct. In Count III, Davisson alleges that Credit Acceptance violated Ohio common law, specifically through conversion and trespass to chattel, by its conduct in repossessing Davisson's vehicle.

The class action Counter-Claim seeks a variety of forms of relief, including: (a) a monetary judgment, including actual damages, punitive damages, statutory penalties, attorneys' fees, and costs against Credit Acceptance and in favor of Davisson and the other alleged members of the putative Class; (b) a declaration that the acts and practices of Credit Acceptance are unfair, deceptive and unconscionable sales practices; (c) an injunction requiring Credit Acceptance to discontinue the allegedly unfair, deceptive and unconscionable sales practices; (d) a declaration that Credit Acceptance may not recover the cost of repossession of the vehicle of

any alleged member of the putative Class and that Credit Acceptance is not entitled to a deficiency judgment against any alleged member of the putative Class; (e) an injunction commanding Credit Acceptance to return any costs of repossession or deficiency judgments recovered from any alleged member of the putative Class; and (f) an injunction commanding Credit Acceptance to remove any adverse credit information which Credit Acceptance reported to any credit reporting organization regarding any alleged member of the putative Class. Counter-Claim at ¶¶ 58-60.

Thus, all of the allegations, claims and causes of action alleged by Davisson in the Counter-Claim relate to Credit Acceptance's "collection of amounts due under [the] Contract" and are thus within the scope of the parties' broad Agreement to Arbitrate. Consequently, Davisson's Counter-Claim is subject to arbitration. Because the Agreement to Arbitrate validly bars Davisson from asserting any claims on a class basis, arbitration of her claims must be compelled on an individual basis.

## III. ARGUMENT

### A. The Federal Arbitration Act Applies To This Action

The FAA "is a congressional declaration of a liberal policy favoring arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. In section 2 of the FAA, "the word 'involving' . . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, in fact, to have involved interstate commerce." Allied-Bruce Terminix Companies v. Dobson, 513

U.S. 265, 273 (1995) (emphasis in original). In Citizens Bank v. Alafabco, Inc., 123 S. Ct. 2037 (2003), the United States Supreme Court confirmed that Congress, in section 2 of the FAA, exercised "the broadest permissible exercise" of its Commerce Clause power, and it admonished (and reversed) the Alabama Supreme Court for applying a "cramped view" of the Commerce Clause power. Id. at 1240, 1241. See also Fluor Daniel Intercontinental, Inc. v. General Elec. Co., No. 98 Civ. 7181(WHP), 1999 WL 637236, at *3 (S.D.N.Y. Aug. 23, 1999) ("As to the 'involving commerce' requirement, courts have construed the phrase broadly.").

The transaction at issue in this case meets the "commerce" requirement. Davisson is a resident of Ohio, Counter-Claim at ¶ 10, while Credit Acceptance is a Michigan corporation. Davisson purchased a motor vehicle in Ohio from a dealer on or about September 17, 2005, at which time she entered into the Contract to finance the purchase of the vehicle. Counter-Claim at ¶ 15. The Contract was immediately assigned to Credit Acceptance in Michigan. Counter-Claim at ¶ 17. All administrative services for Credit Acceptance including, among others, legal, accounting, tax filing, regulatory, insurance, payroll, advertising, licensing, software, telecommunications and information technology services are provided by the officers of Credit Acceptance acting within the state of Michigan. Busk Declaration at ¶ 6, attached as Exhibit C. Furthermore, Credit Acceptance both purchased and serviced the Contract from Michigan as it has no offices in Ohio. Id. at ¶¶ 3, 6, 10. Thus, the transaction between Davisson, the dealer and Credit Acceptance flowed through interstate commerce. See, e.g., Anderson v. Delta Funding Corp., 316 F. Supp.2d 554, 565 (N.D. Ohio 2004) ("loan transactions historically have been evaluated under the FAA because of the banking industry's connection to commerce").

Furthermore, the Agreement to Arbitrate specifically provides twice that the FAA governs the Arbitration Clause. Courts consider such language evidence of the satisfaction of the interstate commerce requirement. Staples v. The Money Tree, Inc., 936 F. Supp. 856, 858 (M.D. Ala. 1996); Thomas O'Connor & Co. v. Ins. Co. of North America, 697 F. Supp. 563, 566 (D. Mass. 1988); Teel v. Beldon Roofing & Remodeling Co., __ S.W.3d __, 2007 WL 1200070, at *1 (Tex. App. Apr. 25, 2007); see also Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements according to their terms.").

Accordingly, the transaction at issue in this case was one "involving commerce" within the meaning of the FAA and the FAA applies to this action. See Government of the Virgin Islands v. United Indus. Workers, N.A., 169 F.3d 172, 176 (3d Cir. 1999) ("[t]he Supreme Court has stated that the FAA's reach coincides with that of the Commerce Clause.").

**B. Davisson's Claims Fall Within The Broad Scope Of The Agreement to Arbitrate**

Federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89 (2000); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999). Congress enacted the FAA to reverse centuries of judicial hostility to arbitration agreements by placing them on the same footing as other contracts. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1113 (3d Cir. 1993).

Ohio courts have repeatedly recognized that the FAA, which applies to this dispute, evinces a strong federal policy favoring arbitration. See, e.g., Seawright v. Am. Gen. Fin. Servs., 507 F.3d 967, 977-978 (6th Cir. 2007). As the Ohio Supreme Court explained: "Ohio

and federal courts encourage arbitration to settle disputes. Our General Assembly also favors arbitration." ABM Farms, Inc. v. Woods, 81 OhioSt.3d 498, 500, 692 N.E.2d 574, 576 (1998).

Decisions under the FAA – including those in Ohio – have consistently made it clear that the FAA applies to consumer contracts. See, e.g., Randolph, 531 U.S. at 91-92 (enforcing arbitration clause between consumer and lender); Shearson/American Express, 482 U.S. at 222 (enforcing arbitration agreement between customer and brokerage firm); Stout v. J.D. Byrider, 228 F.3d 709, 715-716 (6th Cir. 2000) (applying Ohio law) (enforcing arbitration agreement where Plaintiff alleged violations of the Ohio Consumer Sales Practices Act with respect to sale of a car); Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007) (enforcing arbitration agreement in credit card agreement); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 639 (4th Cir. 2002) (enforcing arbitration agreement in payday loan contract), cert. denied, 123 S. Ct. 695 (2002); Harris v. Green Tree Fin. Corp., 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration agreement between borrower and consumer finance company); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) (enforcing arbitration agreement between consumer and computer manufacturer), cert. denied, 522 U.S. 808 (1997); Howard v. Wells Fargo Minn., N.A., No. 06-2821, 2007 WL 2778664 (N.D. Ohio Sept. 21, 2007) (enforcing arbitration agreement in residential mortgage). The Supreme Court itself has acknowledged that the FAA is intended to apply to consumer transactions and benefits consumers:

> "We agree that Congress, when enacting this law [the Federal Arbitration Act] had the needs of consumers, as well as others, in mind. See S. Rep. No. 536, 68th Cong., 1st Sess., 3 (1924) (the Act, by avoiding 'the delay and expense of litigation,' will appeal 'to big business and little business alike, . . . corporate interests [and] . . . individuals'). Indeed, arbitration's advantages often would seem helpful to individuals . . . complaining about a product, who need a less expensive alternative to litigation." See, e.g., H.R. Rep. No. 97-542, p. 13 (1982).

Allied-Bruce Terminix Cos., 513 U.S. at 290. Arbitration is highly favored for its "simplicity, informality, and expedition." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

Under the FAA, a court must compel arbitration if it finds: (1) that a valid arbitration agreement exists between the parties, and (2) that the dispute before it falls within the scope of the agreement. See Mitsubishi Motors Corp., 473 U.S. at 626-28; Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir.2003); Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001); Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997); Farsi v. Sterling Jewelers, Inc., No. 07-131, 2007 WL 2323317, at *3 (D. Or. Aug. 9, 2007); Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004). It has long been well-settled law that the merits cannot be considered when deciding an arbitration motion. See, e.g., AT&T Technologies, Inc. v. Comm. Workers of Am., 475 U.S. 643, 649 (1986); Keystone Shipping Co. v. Masters, Mates & Pilots Pension Plan, 671 F. Supp. 367, 370 (D. Md. 1987). As the Sixth Circuit succinctly explained: "Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483, 487 (6th Cir. 2001), cert. denied, 535 U.S. 970 (2002). The requirements for enforcement of an arbitration agreement are satisfied in the present case.

**1. A Valid And Enforceable Agreement To Arbitrate Exists Between The Parties.**

The Credit Acceptance Agreement to Arbitrate has been enforced by a state court in Ohio as well as a federal district court in Michigan. A true and correct copy of the Ohio order is attached as Exhibit E and a true and correct copy of the Michigan order is attached as Exhibit

F. The Agreement to Arbitrate also should be enforced, and arbitration compelled, in the present case.

Davisson, of course, bears the burden of proving that the Agreement to Arbitrate is invalid in some way. Randolph, 531 U.S. at 92; Howard, 2007 WL 2778664, at *3. Furthermore, courts may only invalidate arbitration agreements based upon generally applicable contract defenses. 9 U.S.C. § 2; Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996). However, even when using doctrines of general applicability, such as unconscionability, courts are not permitted to employ those doctrines in a manner which would subject arbitration agreements to special scrutiny. See, e.g., Perry v. Thomas, 482 U.S. 483, 493 n.9 (1987). This is a heavy burden that Davisson cannot satisfy.

The United States Supreme Court has specifically held that a court may only consider challenges directed specifically and solely to the arbitration agreement. Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1210 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). Thus, an arbitration agreement must be upheld and enforced by the courts even though the rest of the contract may later be held invalid by the arbitrator. Prima Paint, 388 U.S. at 404; Harris, 183 F.3d at 179.

In any event, there can be no serious dispute that the Agreement to Arbitrate here is valid and fully enforceable under the FAA. The Contract clearly bears Davisson's signature. Furthermore, Davisson's Counter-Claim admits that she executed the Contract. Counter-Claim at ¶ 15.

Thus, the Agreement to Arbitrate is valid and fully enforceable.

**2. The Counter-Claim Falls Squarely Within the Scope of the Agreement to Arbitrate.**

Davisson's Counter-Claim and the claims stated therein fall squarely within the scope of the Agreement to Arbitrate.

The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp., 460 U.S. at 24-25; accord Fazio, 340 F.3d at 392; Howard, 2007 WL 2778664 at *2. Accordingly, the United States Supreme Court has held that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." AT&T Technologies, Inc., 475 U.S. at 650. The presumption in favor of arbitrability "is particularly strong when the arbitration clause in question is broad," id., as it is in this case. Indeed, as recently reaffirmed by the Supreme Court in Randolph, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Randolph, 531 U.S. at 91.

Ohio courts have also repeatedly recognized that arbitration is to be given the benefit of the doubt in favor of arbitration. See, e.g., Ignazio v. Clear Channel Broadcasting, Inc., 113 Ohio St.3d 276, 280, 865 N.E.2d 18, 21 (2007); Ball v. Ohio State Home Servs., 168 Ohio App.3d 622, 626, 861 N.E.2d 553, 555 (2006). As one court explained, an arbitration agreement "creates a presumption that the parties agreed to arbitrate all disputes, including those regarding the validity of the contract in general." Crawford v. Ribbon Technology Corp., 138 Ohio App.3d 326, 332, 741 N.E.2d 214 218 (2000).

Moreover, in addition to the strong presumption of arbitrability, Davisson's claims are clearly covered under the broad language of the Agreement to Arbitrate. All of her

claims relate to Credit Acceptance's efforts to collect amounts due under the Contract. The Agreement to Arbitrate specifically provides that any dispute "arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Contract" shall be subject to binding arbitration.

**C. Davisson Agreed To Arbitrate On An Individual Basis**

Arbitration under the FAA is a matter of consent and arbitration agreements must be enforced as written. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995); Volt Info. Scis., Inc., 489 U.S. at 479. The FAA's "principal purpose" is to "ensur[e] that private arbitration agreements are enforced according to their terms." Id. at 478. "[I]t is the language of the contract that defines the scope of disputes subject to arbitration . . . nothing in the statute [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in that agreement." EEOC v. Waffle House, 534 U.S. 279, 289 (2002).

The overwhelming majority of courts have enforced class action waivers, including recently this Court. See e.g., Howard, 2007 WL 2778664 at *4-5; Eaves-Leonos v. Assurant, Inc., No. 07- 0018, 2008 WL 80173 at *7-9 (W.D.Ky. Jan. 8, 2008); Gay v. CreditInform, --- F.3d ----, 2007 WL 4410362 (3rd Cir. Dec. 19, 2007) (arbitration agreement with waiver of ability to bring class action enforceable as a matter of federal law); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005) ("prohibition of class actions . . . consistent with the goals of 'simplicity, informality, and expedition' touted by the Supreme Court in Gilmer."); Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 174 (5th Cir. 2004) (same).[1] See also Burden, 267 F.3d at 492 (noting on remand "strong precedent" in support of validity of class waiver).

---

1 Accord Livingston, supra; Snowden v. Checkpoint Cashing, 290 F.3d 631, 637 (4th Cir. 2002) (arbitration clause barring class actions not unconscionable); Johnson v. West

For example, the Supreme Court of North Dakota confronted this issue in Strand v. U.S. Bank National Association ND, 693 N.W.2d 918 (N.D. 2005). In Strand, the plaintiff argued that the no-class-action provision was substantively unconscionable because he would "be left without an effective remedy for the Bank's alleged wrongful conduct if the clause is enforced . . . because his and other cardholders' individual damages are small [and] it is impractical to bring separate, individual arbitration proceedings for each claim, and no attorney will be willing to litigate such claims." Id. at 926. The North Dakota Supreme Court, however, rejected these arguments concluding that "[m]erely restricting the availability of a class action is

---

Suburban Bank, 225 F.3d 366 (3d Cir. 2000), cert. denied, 531 U.S. 1145 (2001) (enforcing class action waiver in action against payday lender alleging violations of Truth in Lending Act ("TILA")); Lloyd v. MBNA America Bank, N.A., 27 Fed. Appx. 82, 2002 WL 21932 (3d Cir. Jan. 7, 2002) (right to a class action is "merely procedural" and may be waived, "an arbitration clause barring classwide relief for claims brought under the TILA is not unconscionable"); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294 (5th Cir. 2004); Jenkins v. First American Cash Advance of Ga., Inc., 400 F.3d 868 (11th Cir. 2005), cert. denied, 126 S. Ct. 1457 (2006); Dumanis v. Citibank (S.D.), N.A., No. 07-CV-6070, 2007 WL 3253975 (W.D.N.Y. Nov. 2, 2007); Torres v. Chrysler Fin. Co., No. C 07-00915, 2007 WL 3165665 (N.D. Cal. Oct. 25, 2007); Ornelas v. Sonic-Denver T, Inc., No. 06-cv-00253, 2007 WL 274738 (D. Colo. Jan. 20, 2007); Chalk v. T-Mobile USA, Inc., No. 06-CV-158-BR, 2006 WL 2599506 (D. Or.) (Sept. 7, 2006); Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp.2d 1360, 1365 (N.D. Ga. 2002) ("prohibiting class-wide arbitration does not render an otherwise valid arbitration clause unconscionable"); Pick v. Discover Financial Services, Inc., No. Civ. A. 00-935-SLR, 2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001) ("it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions"); Edelist v. MBNA Am. Bank, 790 A.2d 1249 (Del. Super. 2001); Brown v. KFC Nat'l Management Co., 82 Hawai'i 226, 246 & n.23, 921 P.2d 146, 166-67 & n.23 (1996) (the inability to pursue a class action in arbitration did not make arbitration "inherently unfair" to employees); Wilson v. Mike Steven Motors, Inc., 111 P.3d 1076 (Kan. Ct. App. 2005); Walther v. Sovereign Bank, 386 Md. 412, 438, 872 A.2d 735, 750, 751 (2005); Tsadilas v. Providian National Bank, 13 A.D.2d 190, 786 N.Y.S.2d 478 (2004); Ranieri v. Bell Atlantic Mobile, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448, 449 (2003) ("a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy"); Strand v. U.S. Bank National Association ND, 693 N.W.2d 918 (N.D. 2005); Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351, 364-65 (Tenn. App. 2001); AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 199 (Tex. App. 2003).

not, by itself, a restriction on substantive remedies. The right to bring an action as a class action is purely a procedural right." Id.

Similarly, in Walther, the Maryland Court of Appeals reached the same conclusion in words equally applicable to the present case:

> [W]e would be adverse to a holding in the present case which would allow petitioners to avail themselves of a class action contrary to the provisions of a freely-signed agreement to arbitrate that includes a no-class-action provision which was conspicuously presented as part of the arbitration clause. . . . We cannot ignore the strong policy, made clear in both federal and Maryland law, that favors the enforcement of arbitration provisions. We believe that the opinions to which petitioners cite that hold otherwise give short shrift to this principle.

386 Md. at 438, 872 A.2d at 750, 751.

In accordance with Davisson's fully executed Contract requiring her to submit her claims to arbitration if requested, and to do so only on an individual basis and not as a class action, Davisson should not be permitted to proceed with her Class Action Counter-Claim.

## IV. CONCLUSION

For all of the foregoing reasons, Credit Acceptance respectfully requests that this Court grant its Petition to Compel Arbitration.

Respectfully submitted,

/s/ Michele Smolin
Michele Smolin (0059930)
Kathleen Nitschke (0073397)
GIFFEN & KAMINSKI, LLC
Suite 2100
1717 East Ninth Street
Cleveland, Ohio 44114
Telephone: (216) 621-5161
Facsimile: (216) 621-2399
E-Mail: msmolin@thinkgk.com
knitschke@thinkgk.com
***Attorneys for Plaintiff***

Of Counsel:

Alan S. Kaplinsky
Martin C. Bryce, Jr.
Michael I. White
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
(215) 864-8999

Dated January 17, 2008

**CERTIFICATE OF SERVICE**

A copy of the foregoing *Memorandum of Law of Credit Acceptance Corporation in Support of Its Petition to Compel Arbitration* was served by email transmission and regular U.S. mail this 17th day of January, 2008 upon the following:

Thomas R. Theado (0013937)
Gary, Naegele & Theado, LLC
446 Broadway Avenue
Lorain, Ohio 44052-1740
Phone: 440-244-4809
Fax: 440-224-3462
E-Mail: TomTheado@aol.com

Jack Malicki, Esq. (0077975)
The Law Office of Jack Malicki, LLC
230 Third Street – Second Floor
Elyria, Ohio 44035-5660
Phone: 440-284-1601
Fax: 440-322-6474
E-Mail: JackM@OhioConsumerRights.com

/s/ Michele Smolin
Michele Smolin
*One of the Attorneys for Plaintifft*